We begin hearing argument in Abernethy v. EmblemHealth. Good morning. May it please the Court. Renan Varghese for Plaintiff Appellants. All of our clients in this case were former senior officers at a health insurance company who were promised health benefits during their retirement at the same coverage level that Emblem provides to its active officers. However, once our clients retired, Emblem reneged on this promise in violation of the law. In granting defendants' motion to dismiss, the district court made three fundamental errors of fact and law. There's one paragraph which seems to come up over and over again. You can argue it as far as I'm concerned, any way you want. But notwithstanding the foregoing such company may, that paragraph comes up again and again in consideration of this, I think. And it's important to my consideration, I think, for you to explain how that operates. Now go ahead and do whatever you want to do. No, that is one of the points I wanted to get to, Your Honor. What the district court misapprehended is that the employment agreement has two separate terms. The first clause, which is paragraph 5A and is located at appendix 144, only applies to those benefits that are provided to active officers. It specifically states that by its terms, it's limited to those benefit plans that are, quote, generally available to officers of Emblem Health. It does include retiree health benefits in there, and that's a little bit confusing. But in that paragraph, Emblem has the right to amend any of the plans given to active officers, and there is no vesting. However, under paragraph 5B, which is on appendix 145, Emblem Health specifically delineates the requirements for the retiree health benefits that are relevant to this case. And in paragraph 5B, there is no reservation of rights, there's no reference to any external plan documents. The only conditions attended to plaintiff's retiree health benefits are that the plaintiff stay retired, that they pay the same premiums as active officers, and that once they become Medicare eligible, they enroll in Medicare. The district court conflated 5A and 5B improperly. When read together, what the employment agreements actually state is that Emblem has the right to change any benefits that are given to active officers, and that would have the corresponding flow-through effect of changing the benefits given to retirees. Basically, your view is that the company can terminate altogether the health benefits to your clients if they terminate altogether the health benefits to the non-retired senior officers. Exactly, Your Honor. As long as they terminate all health benefits to active officers, that would have the effect of terminating the health benefits available to retirees. You're claiming contractual parity. I'm sorry? You're claiming by contract, you're claiming parity. Yes. And the district court, however, looked at paragraph 5A and looked at the fact that it mentioned retiree health benefits and held that Emblem had the right to change retiree health benefits at any point. That is not the case. As Your Honor explained, the only way that Emblem could terminate the retiree health benefits to our clients was if they terminated all health benefits to active officers. The district court recognized that there was a potential ambiguity in the employment agreements and separation agreements, and that should have ended the analysis there. Under this court's prior reasoning in the Devlin case, a plaintiff is, quote, permitted to proceed to a trier of fact based on ambiguous plan language. Instead of allowing our clients to proceed to even discovery in this case, the district court looked at external plan documents that were neither cited to in the complaint, they were not relied upon in any way in the complaint, and they were not central to the complaint in any way. Which documents are those? There are four summary plan descriptions that the district court cited to, and the district court said that those four summary plan descriptions act to, quote, repair any potential ambiguity in the employment agreement and separation agreement. However, not only were these documents not included in the complaint in any way, but they are not even an accurate summary of the benefits available to our clients. All four of the summary plan descriptions cited to by the district court are inapplicable in this case. All of our clients are officers of emblem health who retired by 2013. Two of the summary plan descriptions cited by the district court do not apply to officers at all, and the other two summary plan descriptions cited to by the district court went into effect in 2015 and 2016, after our clients had retired and been receiving benefits for years. Under this court's reasoning in Devlin v. Empire and Gibbs v. Cigna, the only SPDs that are relevant are the SPDs that were in effect at the time of our client's retirement. Because none of these SPDs qualify, they should not have been considered by the district court. In effect, the district court both went outside the scope of the pleadings and drew inferences in defendant's favor by finding that the SPDs were a complete set of SPDs that described the benefits available to our clients. Both of those arguments are incorrect. What are the applicable plan documents, or we don't know yet? We don't have the applicable plan documents, and that's a fundamental issue in this case. We need discovery to determine what the actual plan documents say, and we need discovery to show what the parties actually meant in light of the ambiguities recognized by the district court. Would you agree that your clients only have a valid, viable claim if the benefits have vested? Yes. Is there any allegation that those benefits have vested? Yes, the benefits vested once our clients retired. The benefits were conditioned on the clients retiring, and the benefits vested in the separation agreements that all of our clients signed. The other mistake that the district court made was that it looked at the Supreme Court's 2016 decision in Tackett to hold that the plaintiffs needed to identify, quote, expressed language evidencing an intent to vest the benefits for life because the benefits plaintiffs seek have no fixed duration. However, that is not what Tackett says. Tackett is limited to the collective bargaining context and contracts with general judicial clauses, neither of which are applicable here. Under this court's reasoning that was confirmed just last month in the Kelly v. Huntingwell decision, lifetime benefits or benefits for an indefinite duration can be vested under ERISA. Here, our clients are stating that they get benefits so long as health benefits are provided to active officers. That is indefinite benefits. Sorry, those benefits are for an indefinite duration. And the language in the employment agreement specifically states that plaintiffs shall be entitled to retiree health benefits. That shall be tracks the language that we use in Devlin to also find vesting of potential benefits. Finally, the district court misread the separation agreement. The separation agreement in paragraph 1B provides for benefits when a plaintiff retires. However, the district court looked at paragraph 1C to say that it referred to external plan documents. But 1C specifically carves out any severance described in the separation agreement. Because the retiree health benefits are described in the separation agreement, it is not subject to revision under the later paragraph 1C. Thank you. Thank you, Mr. Vergeles. You've reserved two minutes for rebuttal. Mr. Nielsen. Good morning, Your Honors. May it please the Court. Mark Nielsen on behalf of Emblem Health and its related companies who are defendants in this action. There is a presumption in the law that retiree health benefits do not vest. And under the Supreme Court's ruling in Tackett in 2016 and under this Court's ruling last month in the Kelly v. Honeywell case, plaintiffs must point to specific language in the governing written documents that identify that there is vesting. What the plaintiffs here have argued is that there are two documents that allegedly vest them with their benefits. The first is the employment agreement that was discussed. Section 5B, according to the plaintiffs, vests them with retiree health benefits. But if you look at Section 5B, there is no discussion of how long those benefits will be made available. It simply says that the individual shall be eligible for retiree health benefits. And indeed, they were eligible and they have received and continue to receive retiree health benefits to this day. There isn't any doubt that ERISA gives an employer the ability unilaterally to change health benefits or eliminate them. So they're not vested in that sense. But why isn't there here a contractual agreement that if these people retire and agree to take Medicare and agree to pay premiums, they will have parity in their health coverage with the active senior officers, meaning that nothing is vested. You can eliminate or reduce the health benefits of the senior officers. It's just that the retired officers have parity with whatever you do, increasing or decreasing or eliminating the benefits for those who are active. Your Honor, with respect to the employment agreements, Section 5A has a very specific and very broad reservation of rights provision in it that specifically provides that emblem health reserve the right to amend, modify, or terminate the benefits. What the plaintiffs are asking the court to do is simply ignore Section 5A and that reservation of rights language, saying that Section 5B is a specific promise of vested benefits. Certainly you have the right to terminate the benefits. The question is whether under the contract you can terminate the retiree's benefits without terminating the benefits for those who are active. Your Honor, in the separation agreements, which are the second document by which the plaintiffs claim that they are entitled to vested benefits, that provision, which is Section 2B, makes a twofold promise. It says, first, that when one of the plaintiffs here retired, they would be entitled to continue coverage under the active plan for a period of 18 months and emblem health would pay their COBRA premiums. After that, these executives were then moved to the retiree health benefit plan, which is a capitalized, defined term in the severance agreement. What the severance agreement says is they will be eligible to commence retiree health benefits. They will be able to commence retiree health benefits at the same level as provided to an active officer. That is exactly what they were promised. They commenced the benefits, every one of these individuals. They have been covered by these benefits for, in some cases, better part of 10 years. As you read that, they could commence the benefits and then the benefits could be terminated after one month. But in this case, Your Honor, it was not terminated after one month. They continue on to today. The way you read it, it becomes rather illusory, doesn't it? Who wants health benefits for one day? Your Honor, with respect to this issue, the Tackett case does say that for benefits, if there is a promise of a benefit, it has to be provided for a reasonable period of time. I would submit that retiree benefits that have been provided in excess of 10 years in some cases is not an illusory promise. Moreover, unlike what the plaintiffs claim in their briefs, that somehow the retiree health benefits were the sole consideration for their retirement, the severance agreements clearly indicate that there was very significant amounts of money paid out to each one of these senior executives, which also served as a form of consideration. So it's not that this is an illusory promise. These were real benefits provided for a long period of time, and they continue to be promised. The way that we interpret Section 5B is that the retirees in this case, when they move to the retiree health benefit plan, they would receive the same level of coverage that an active officer who was eligible for a retiree health benefit plan would be entitled to. That's what they were promised. In this case, the plaintiffs are actually getting more than what active officers receive because Emblem Health has eliminated retiree health benefits for all of its active officers. There's no such plan. Only the plaintiffs continue to receive retiree health benefits at this time. You're saying you eliminated retiree health benefits for the active. That is correct. Yes, but you didn't eliminate the health benefits for the active. No, Your Honor, because the plaintiffs argue that the retiree health benefits are tied to the benefits provided to active employees while they are employed. We think the better reading of Section 5B is that they, the executives here, are entitled to the retiree health benefits at the same level as those retiree health benefits are provided to active employees. There are no active employees who are eligible for retiree health benefits anymore. So in our view, we have provided them not only with benefits beyond what they're entitled to, but they're getting better benefits than what active employees are entitled to. Because active employees are not now entitled to retiree benefits. Correct, Your Honor. So the benefits you're talking about are retiree benefits and not health benefits, or retiree health benefits, but we're not talking about health benefits. We are not talking about health benefits for the active employees. That is correct. This is probably just off the wall, but since they were required to take Medicare and since they've been retired for 10 years, why is this even an issue anymore? Presumably they were all getting Medicare benefits, which means that the retiree benefits would simply be a backstop or an excess. Well, Your Honor, I believe with respect to the plaintiffs in this case, there are a number who are not Medicare eligible yet. I believe some of the people when they retired were in their 40s. And I would point out that while the severance agreement does provide. I thought that's only policemen. I'm sorry? I thought that was only policemen. These executives did very well when they left the company. Some quarterbacks, yes. Your Honor, one thing that I would point out with respect to the provision in the separation agreement that provides that once they become Medicare eligible, they must enroll in Medicare, and then this plan would become essentially a secondary plan. This court in the Joyce case, which is cited in our brief, found that language that talks about retiree benefits terminating at Medicare eligibility was not sufficient to indicate an intent to vest those benefits. So we take the view, and we believe it's also codified in Section 4 of the separation agreement, subsection 4, that there is also a reservation of rights in there as well, in that Emblem Health says that the retiree health benefits available to these executives are subject to the terms of the applicable plan as they may change. The applicable plan here is the retiree health benefit plan, which does have reservation of rights language in it as well. And with respect to the issue of the SPDs that the plaintiffs raised, they concede in the I'm sorry? I understand this. So you're saying that the parity that these plaintiffs enjoy is to have the same benefits on the retirement health plan as active officers get under any retirement health plan, and the active officers get no benefits. That is correct. There is no retirement health plan. That is correct, Your Honor. With respect to the SPDs that were discussed, the SPDs the district court found did have clear and unequivocal reservation of rights language, and the plaintiffs don't dispute that the language is clear and unequivocal. Those properly considered at this stage of the proceedings? They were, Your Honor. And as mentioned in our brief, even though the plaintiffs did not bring those SPDs or attach them to the complaint, the terms of the employee benefit plan are clearly integral. They're suing for a denial of benefits. The only way the court could determine what those benefits are is by looking to the terms of the plan. And there are a number of cases cited in our brief where district courts and the Second Circuit have allowed for SPDs and other governing plan documents to be introduced and considered on a motion to dismiss, even though they weren't attached to the plaintiff's complaint. With respect to the timing of the SPDs, the plaintiffs conceived that the 2009 SPD applies to them and applies to their class of plaintiffs. That SPD said that the benefits could be amended or changed and that they were, in fact, amended or changed periodically. That is exactly what happened here. We, or Emblem Health, modified the benefits that were available to this class of retirees. They changed it from group health insurance or major medical coverage to a health reimbursement arrangement. The 2009 SPD clearly allows for that kind of a modification to be made. There's also a 2008 SPD that would clearly be applicable to certain of the plaintiffs that retired in 2008. It had absolutely clear and unambiguous reservation of rights language as well. As for the 2015 and 2016 SPDs, we believe the district court did properly consider those. The plaintiffs are asking for reinstatement into the plan as it existed as of December 31, 2016. The SPDs set forth what the terms of those plans are, and those include clear and unambiguous reservation of rights language that is specifically contemplated by both the employment agreement in Section 5A and by the severance agreements in Section 2B. One other point that I want to raise, which wasn't addressed on the appellant's oral argument but is raised in the brief, deals with the state law causes of action. The district court dismissed those state law causes of action. The plaintiffs barely bring them up in their briefs. In our view, we think those claims have been waived on appeal. But even if not, this court has held in a number of cases, including the Panacea case from the Second Circuit, that state law causes of action that seek the recovery of denied benefits under an ERISA plan are clearly and completely preempted. The plaintiffs brought their claim under ERISA Section 502. They allege that there is an ERISA plan here. We agree that there is an ERISA plan. The state law causes of action are clearly designed to supplement and get remedies that are not available under ERISA. Therefore, they are preempted. My understanding is that the claim has somewhat morphed so that it's really now more of a state law contract claim. And it's preserved. It's not emphasized in the briefs, but it's there. And so the question becomes whether one can put ERISA aside if all you have is an agreement of parity with something that is an ERISA plan. And as a state law contract claim for parity with something that is an ERISA plan, and as you argue that that would be the ERISA retirement health plan, and the other side saying, well, no, that's the actual ERISA health plan. Your Honor, the claims that— I hope that's clear. I'm trying my best here. Your Honor, with respect to the state law claims, the plaintiffs are arguing. They say that even though they have brought an ERISA claim that seeks the recovery of ERISA benefits, they are entitled as an alternative to somehow plead that this is not an ERISA claim, but these are state law causes of action based on the employment and the severance agreements. Those types of claims have been argued before this Court, and the Court has rejected those arguments in the past where the interpretation of the contract under the state law would require reference to the benefits available under an ERISA plan. And here, there's no way to interpret these documents. Your Honor, it would require mere reference. It wouldn't have to be an interpretation of the ERISA plan. A mere reference to it? Well, in this case, clearly it would have to be an interpretation, not just a reference alone, I think. It would have to be an interpretation because it would either be the ERISA retirement health plan or the ERISA health plan itself. In either case, whether the plaintiffs were seeking to enforce through their contracts, they're seeking to get benefits under the active plan or under the retiree health plan. Either way, they are both ERISA plans. They're seeking the benefit of our ERISA plans. I'm sorry, Your Honor? They are seeking the benefit of our ERISA plans. That is correct, Your Honor. And under this Court's decision in the Arditi case, the Court held that where the remedy that is sought is the denial of benefit that requires the Court to interpret what those benefits are under the ERISA plan, that is sufficient to invoke complete preemption, and the state law claims are not properly brought before the Court. Thank you. Thank you. Thank you, Mr. Nielsen. Mr. Varghese, you've got two minutes, but if you need a little more, we'll be lax with the red light, or lax with cutting you off, anyway.  May it please the Court. Emblem mentioned paragraph 5B in the employment agreements and said that plaintiffs are only entitled to the retiree health benefits that are given to active officers. However, if you actually read paragraph 5B, you'll see that this is not a fair interpretation. Paragraph 5B states, quote, the executive shall be entitled to receive retiree health coverage at the same level as that provided an active officer for himself and his spouse or domestic partner, provided that he pays the same amount for the premium for such coverage as is paid by an executive then employed by Emblem Health Services for the same level of medical benefits. This does not refer to retiree health benefits. Active officers are not paying premiums for retiree health benefits. Active officers only pay the premiums for the health benefits they receive. What plaintiffs are alleging in this case is not a reference to the retiree health benefits. Retirees do pay health, do pay for the plan. Well, they do pay some amount for the plan. That's one of the conditions of their getting the benefits. But there is no evidence in the record that the active officers are paying anything for the retiree health benefits specifically. They are paying for the health benefits that they're getting while they are active officers, and that is what the plaintiffs are entitled to. The plaintiffs are entitled to pay the same amount for their health benefits while they are retired that active officers pay for their health benefits while they're employed by Emblem Health. So to put it another way, if the current COO of Emblem Health is paying $100 for vision and dental, the retired COO of Emblem Health also gets to pay $100 for vision and dental. But if tomorrow Emblem Health says we are not giving any current officer health benefits once you retire, that does not affect the health benefits given to the former COO. Those benefits have vested at the time they're retired. The only way they can terminate the health benefits to the current COO is to say we are not paying for any health benefits to the current COO. That is the issue in this case. The issue is not a reference to an ERISA plan applicable to someone else. It's the specific promises made to the plaintiffs themselves. In terms of paragraph 2C... Wouldn't that therefore require the court to consult the plan, which is an ERISA plan? It would require the court to consult the plan that was in existence at the time. The plan that was in existence at the time is an ERISA plan, is it not? The plan that was in existence at the time was an ERISA plan. However, we do not have any documents in the record indicating what the plan was at the time. That is the fundamental issue. The fundamental issue is what the plan was at the time, and therefore the fundamental issue is what an ERISA plan provides. Then that would seem to validate your adversary's argument that your claim can't be resolved without reference to an interpretation or at least a reference to understand the terms on an ERISA plan. Not necessarily, Your Honor, because if you look at the employment agreement, the only time you look at the external plan documents are to determine whether the benefits vested under ERISA. You look at the document that contains the promise. If there is a reference to an external document, if it says that your benefits are further explained in the plan documents, you look at the plan documents. But if you look at the employment agreement, there is no reference to an external plan document. The employment agreement specifically states that the executive shall be entitled to receive these health benefits during their retirement. Whatever they are. Whatever they are. I can't imagine something not being an ERISA plan in this day and age, but whether it's ERISA or not ERISA. Exactly. And whether or not it is an ERISA plan, we pled it was as a primary argument, but we do not have the documents to show whether or not it is actually an ERISA plan at this stage. All we are seeking is discovery to get that information, to get the plan documents, to get any kind of external documents such as board meetings, drafts, meeting minutes that indicate the party's intentions. My adversary cited to the Tackett case for the proposition that these kind of benefits are only available. What happens if you get discovery and you find out that it's an ERISA plan? If we get discovery and we find out it's an ERISA plan, then the question becomes, did Emblem reserve the right to amend or cancel the benefits only to our client? And that's an issue that's not ripe for adjudication at this point. That would require consultation of the ERISA plan. Only if the court finds that the promise divest is conditioned on an external document. If the promise divest is a standalone document, it becomes analogous to this court's previous decision in the Devlin case where the plan said that you will be entitled to retiree benefits once you retire. The court held that because that was a promise, even though it was a promise for an indefinite duration, it could reasonably be read to have vested the benefits. And that is all that is required under this court's precedent. It's an issue of identification. All the plaintiff has to do is identify language that can be reasonably interpreted as vesting the benefits, at which point it is not a question that is ripe for adjudication as a matter of law under this court's previous decision in the Pfeiffer v. Prudential matter. And turning to the separation agreements, my adversary made a point that the separation agreements only allow for the commencement of the retiree health benefits, but does not promise any durational component. First, as this court explained in the Kelly decision, an indefinite duration is permissible as a promise divest under ERISA. But second, if you actually read to be in context, it states that EMBLM has to provide 18 months of COBRA coverage, at which point they will be able to commence the retiree health benefits. The term commence is only a timing term. It's paragraph 1B of the separation agreements that lays out the conditions for receiving the retiree health benefits, and paragraph 1B states that the only eligibility requirement is that they remain retired and are not eligible for coverage under another plan. I also wanted to talk about the issue of the 2009 document that defendants raised. The 2009 document, we are not conceding that it is an SPD. We were clear about that in our brief. It may be an SPD if there are no other documents present in the record, or no other documents present at the time. If there are other documents present at the time, however, those documents might be the SPD. If there are not other documents, plaintiffs are entitled to discovery to discern what the intention of the parties were that could be most effectuated by a fair reading of the contract. Thank you. Thank you, Your Honor. Thank you. Thank you both. We'll reserve decision in this case. Thank you.